Filed 1/31/24  Labrot v. Hyundai Motors America CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| PAULA LABROT, | B323255 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 19STCV29566) |
| v. | |
| HYUNDAI MOTORS AMERICA, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Stephanie M. Bowick, Judge.  Affirmed.

MLG Attorneys at Law, John M. Whelan, Jonathan A. Michaels, Kseniya Y. Stupak for Plaintiff and Appellant.

Lewis Brisbois Bisgaard & Smith, Anthony E. Sonnett, Jocelyn A. Julian, Robert W. Maxwell for Defendant and Respondent.

# INTRODUCTION

Plaintiff Paula LaBrot was getting into her daughter's Hyundai Sonata when her daughter accidentally closed the passenger door window, catching LaBrot's fingers between the window and door frame. LaBrot's ring finger was almost completely severed. LaBrot sued Hyundai Motor America (HMA), the distributor of the vehicle, for strict liability design defect, strict liability manufacturing defect, and negligence on the basis that the vehicle's window system failed to comply with Federal Motor Vehicle Safety Standard No. 118 (49 C.F.R. § 571.118) (FMVSS 118). The trial court granted HMA's motion for summary judgment, and LaBrot appealed.

LaBrot contends the trial court erred in sustaining HMA's objections to portions of her evidence, including the declaration and testing results submitted by LaBrot's expert witness, David Bosch. We find no abuse of discretion in the trial court's evidentiary rulings.

LaBrot further contends the trial court erred by focusing on FMVSS 118, rather than considering her claims under the consumer expectations test or a risk-benefit analysis. However, LaBrot's complaint alleged that the nature of the defect was HMA's alleged failure to comply with FMVSS 118. Because "'[t]he pleadings delimit the issues to be considered on a motion for summary judgment'" (*Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1253 (*Laabs*), the trial court did not err by limiting the issues to those in LaBrot's pleadings. We further find the trial court did not err in holding that LaBrot failed to present a triable issue of material fact as to each of her causes of action. We therefore affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

**A.     The incident**

Sky LaBrot, LaBrot's daughter, leased a 2017 Hyundai Sonata.  In August 2019, Sky,[1] her two children (ten months and four years old), and LaBrot returned to the car after eating lunch at a restaurant.  The adults loaded the children into the back seat.  Sky got into the driver's seat and started the car. Sky had left the vehicle's windows open four to six inches to ventilate the car.  As LaBrot was preparing to get into the front passenger seat, she placed her right hand on the passenger window for support.  Sky, not realizing that LaBrot's hand was resting on the window, rolled up the car's windows.

LaBrot's right ring finger was caught between the window and the window frame.  The finger was sliced through just above the first knuckle; the bone was cut and the fingertip remained attached by only a piece of skin.  LaBrot's fingertip was surgically reattached.

**B.     LaBrot's complaint**

In August 2019, LaBrot filed a complaint against HMA. She alleged, "The U.S. Department of Transportation promulgates several 'Federal Motor Vehicle Safety Standards' ('FMVSS') that govern the safety features of motor vehicles. FMVSS No. 118 requires that vehicles equipped with automatic windows . . . contain a 'stop-and-reverse' feature. Specifically, FMVSS 118 requires that automatic windows automatically stop and reverse at 100 newtons of pressure.  It takes far greater pressure than 100 newtons to severe a human finger."

---

[1]     We refer to Sky LaBrot by her first name to distinguish her from plaintiff Paula LaBrot.

LaBrot asserted five causes of action; only three are relevant to this appeal.[2]  In the first cause of action for negligence, LaBrot asserted that HMA had a duty to comply with FMVSS 118, failed to comply with it, and placed the vehicle into the stream of commerce with a defective power window system.  She alleged that had HMA complied with FMVSS 118, her finger would still be intact.[3]  In her second cause of action for strict liability design defect, LaBrot alleged the vehicle had a "defect in the form of an automatic power-operated window which was not designed in compliance with FMVSS No. 118.  That is, the vehicle did not 'stop and reverse direction' as required in sub-section S5.1 of FMVSS No. 118."  She asserted that her "finger would still be intact but for Defendant's neglect in manufacturing its product in compliance with FMVSS No. 118 – an automatic power-operated window which retracts upon encountering an obstruction such as Plaintiff's finger."  In the third cause of action for strict liability manufacturing defect, LaBrot alleged the "subject vehicle contained a manufacturing defect in the form of the automatic power-operated unit that had a defective passenger window

---

[2]    LaBrot's fourth cause of action was breach of express warranty; she later dismissed this claim.  LaBrot's fifth cause of action was for breach of implied warranty of merchantability.  The court granted summary judgment as to this cause of action, and LaBrot does not challenge the ruling on appeal.

[3]    As part of her negligence claim, LaBrot alleged HMA was negligent for failure to warn.  However, Sky testified that she had never read the car's owner's manual, and the trial court granted HMA's motion for summary judgment as to this issue.  On appeal, LaBrot does not challenge this portion of the court's ruling.

system."  She alleged her "finger would still be intact if Defendant had manufactured its product in compliance with FMVSS No. 118."

LaBrot prayed for compensatory damages, interest, and costs.[4]

## C.    HMA's motion for summary judgment

HMA moved for summary judgment, or in the alternative, summary adjudication.  (Code Civ. Proc., § 437c.)[5]  HMA explained that the vehicle at issue was "equipped with power windows. . . .  The windows have a one-touch convenience feature [that] allows the operator to fully open or close the window by depressing and then releasing the control switch. . . .  In other words, the operator does not need to keep [her] finger on the window switch the entire time for the window to go fully up or fully down. As with most modern cars, the windows on the 2017 Sonata have two closing modes—automatic (i.e., one-touch or auto-up) and manual (i.e., continuous-hold).[ ]  The vehicle also has an 'automatic reverse' function" that is "only active when the 'auto up' function is used by fully pulling up the switch."  The owner's manual HMA submitted stated that when the "auto up" feature is used, "If a window senses any obstacle while it is closing automatically, it will stop and lower approximately 12 inches (30 cm) to allow the object to be cleared."

_____

[4]    LaBrot also prayed for punitive damages, but the trial court later granted HMA's motion to strike the punitive damages allegations for lack of specificity.

[5]    All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

5

HMA attached FMVSS 118, pointing to subsections "S4" and "S5." Section S4 begins, "*Operating requirements.* Except as provided in S5, power operated window . . . may be closed only in the following circumstances: . . . ." Section S4 has seven subdivisions setting out how power windows may be closed, such as closing only when the vehicle's key or starting mechanism is in an "on" or "start" position, closing by a remote device operated within six meters of the vehicle, or closing after the engine has been turned off but before the two front doors have been opened. Section S4 says nothing about obstacles blocking the windows or stop-and-reverse mechanisms. Section S5, however, refers to "automatic reversal systems" in a power window system "that is capable of closing or of being closed under any circumstances other than those specified in S4." Section S5 states that such a window "shall stop and reverse direction either before contacting a test rod [of a certain size] or before exerting a squeezing force of 100 newtons (N) or more"; after reversing, the window must open to a certain position.

Regarding LaBrot's cause of action for strict liability design defect, HMA asserted that LaBrot's interpretation of FMVSS 118 was erroneous. HMA asserted that LaBrot's "design defect claims are essentially premised on an allegation that FMVSS 118 requires that vehicles equipped with automatic windows contain an automatic 'stop-and-reverse' feature that will engage at a force not exceeding 100 newtons." HMA asserted, "The plain language of this regulation makes clear that the compliance analysis begins with Section S4 (not S5, which is the section that addresses the stop-and-reverse system requirements). And it is only where a car's windows are designed to operate *outside* of the operational parameters set out by Section S4 that the Section S5

6

requirements . . . are even triggered." HMA argued, "Nowhere in her discovery responses or in the Complaint does plaintiff provide any facts to show that Section S5" was applicable. HMA further asserted that "the consumer expectation test does not apply in a case such as this, which involves complex design issues and considerations such as the forces required to trigger the automatic reversal of the vehicle's power windows."

HMA submitted the declaration of its expert witness, Robert Lange, who stated that vehicles must comply with *either* section S4 or S5 of FMVSS 118: "A vehicle engineered and certified to comply with Section 4 is not required to comply with Section 5." Lange also opined that the vehicle at issue was engineered to comply with section S4.

Regarding the cause of action for strict liability manufacturing defect, HMA noted that a manufacturing defect arises "when a flaw in the manufacturing process creates a product that differs from what the manufacturer intended." (*Webb v. Special Electric Co., Inc.* (2016) 63 Cal.4th 167, 180 (*Webb*).) HMA asserted that LaBrot's complaint included only conclusory allegations about a manufacturing defect, and when asked in discovery about evidence of a manufacturing defect, LaBrot only described the incident and her injury. HMA argued, "Plaintiff's recitation of . . . how the incident occurred and description of her alleged injuries do not establish a manufacturing defect. . . . There is nothing in [LaBrot's discovery responses] stating if and how the subject vehicle differed from the manufacturer's design or specifications or from other typical units of the same product line. "

For the negligence cause of action, HMA focused on the element of duty. HMA noted that it was the distributor of the

7

vehicle; it did not design or manufacture the vehicle. HMA asserted that LaBrot's claim amounted to "an allegation that HMA, as the wholesale distributor of Hyundai brand motor vehicles, was negligent in failing to conduct its own design review, developmental testing, manufacturing quality control, and FMVSS compliance testing of Hyundai automobiles above and beyond that which was done by the vehicle's manufacturer." It acknowledged that strict liability may be imposed on defendants within a chain of distribution, but asserted that a negligence claim could not be upheld under California law. HMA argued that LaBrot was advancing "a novel theory seeking to impose a duty on product distributors to independently evaluate the design, manufacture, quality control, and governmental certification of the products they distribute." HMA also asserted that there was "no evidence that the vehicle did not operate as described in the Owner's Manual."

## D.    LaBrot's opposition

LaBrot opposed HMA's motion on the grounds that there were triable issues of material fact for each cause of action. LaBrot argued that the requirements of FMVSS 118, section S5 applied to the vehicle. She noted that there was an "auto up" feature for the vehicle windows, and asserted, "The 'one-touch' feature, also called the 'auto up' feature, turns an electric power window into an automatic electric power window. [Record citation.] It is the 'auto up' function that requires FMVSS No. 118 S5 to apply."[6]

---

[6]    HMA asserted in its motion that according to Sky's deposition testimony, she was not aware there were two closing modes for the window, and it did not feel as if there were two

8

LaBrot submitted a declaration by her expert witness, David Bosch, who stated that he was "an engineer with 40 years of experience in materials engineering, mechanical engineering, engineering design, in the built construction and automotive technical fields." No curriculum vitae was attached to the declaration. Bosch stated, "Both S4 and S5 of FMVSS No. 118 apply to the subject vehicle. S4 contains a list of methods by which a window can close, and if a window closes by a method other than those listed in S4, then S5 applies. A window being closed by an 'auto-up' feature is not a method listed in S4, and accordingly, any vehicle that has an 'automatic up' feature is required to comply with S5." Bosch also stated, "It is possible for a vehicle to meet the standard of FMVSS No. 118 S4, yet fail to meet the standard(s) of FMVSS No. 118 S5."

LaBrot asserted, "FMVSS No. 118 requires that vehicles equipped with automatic windows . . . contain a 'stop-and-reverse' feature" so that "automatic windows automatically stop and reverse at 100 Newtons of pressure." LaBrot argued that it "will be shown through the remainder of expert discovery" that "it takes far greater pressure than 100 Newtons to sever a human adult finger." LaBrot cited Bosch's declaration, in which he stated, "Based on the reported severing / amputation of a human adult finger, in my professional experience, I believe that the

different positions (manual and auto) for the window switch. Sky stated in her declaration submitted with LaBrot's opposition that she used the auto-up mode for the window, but as discussed below, the trial court sustained HMA's objection to this statement as lacking personal knowledge. Whether Sky closed the window using the manual or automatic mode is not relevant to the issues on appeal.

window on the subject vehicle exerted much more than 100 Newtons."

LaBrot contended that "HMA's own internal specifications for the 2017 Hyundai Sonata power windows clearly states [*sic*] that 'when the force of 100 Newtons is detected while the window is rising, the window is pulled down.' . . . . This shows that, despite HMA's contentions, the 2017 Hyundai Sonata was designed to comply with FMVSS No. 118 S5, and thus, the federal standard does apply to the subject vehicle." LaBrot submitted Exhibit 13, which she characterized as an "internal design specification" for the vehicle. Exhibit 13 states in part, "When driver door power window auto-up switch is operated, safety function is activated," in that "[w]hen the force of 100N . . . is detected while the window is rising, the window is pulled down."

LaBrot also submitted a portion of the Federal Register that included commentary on FMVSS 118. (73 Fed. Reg. 103 (July 7, 2008).) It stated that FMVSS 118 "specifies requirements for power-operated window, partition, and roof panel systems[ ] in motor vehicles to minimize the risk of injury or death from their accidental operation." It continued, "The basic requirements of FMVSS No. 118 are enumerated in paragraph S4 of the standard. They include the fundamental requirement that power windows must not be operable unless the vehicle's ignition switch is in the 'On,' 'Start,' or 'Accessory' position. In this way, the standard provides a simple means (*i.e.*, ignition key removal) by which a vehicle's windows can be disabled and thus safeguarded from accidental closure." The Federal Register also stated, "Paragraph S5 of FMVSS No. 118 allows an alternative means of compliance through the use of

power window automatic reversal systems. If such a system is used in a vehicle and it meets the specified performance requirements of the standard, then the vehicle is not required to meet the window operating restrictions of paragraph S4."

LaBrot asserted that to prove design defect, she need only show that the vehicle failed the consumer expectation test. She argued, "As a reasonable consumer, Plaintiff expected the windows to stop and reverse, not to instead amputate her finger." She also asserted in passing, on the last page of her opposition, that "either the consumer-expectations test or the risk-benefit test *must* be presented to the jury."

LaBrot asserted that the vehicle had a manufacturing defect because "[i]t is indisputable that the vehicle was *designed* to stop and reverse when the sensor detects 100 Newtons of pressure," but here it did not. She also asserted, "When Sky LaBrot rolled up the Hyundai's automatic windows, they were supposed to detect objects more than 0.14 inch (4 mm) in diameter, and stop and reverse. This did not happen." She cited to the same vehicle's owner's manual HMA submitted, which described the stop-and-reverse feature but did not mention newtons of force or any size restrictions regarding an obstacle blocking the window. LaBrot asserted, "Due to this failure to perform as designed, it is clear that a manufacturing defect was present."

LaBrot also asserted there was a triable issue of fact on her negligence claim on a negligence per se theory, based on the standard of care in FMVSS 118.[7] She further asserted that HMA

---

[7] Under the "common law doctrine of negligence per se . . . statutes and regulations may be used to establish duties and

11

failed to use reasonable care. She disagreed that HMA was not liable because it was the distributor of the vehicle, stating, "The company that allegedly designed, manufactured, and tested the subject vehicle – Hyundai Motor Company – is not a party to this action, nor does it need to be. . . . As the representative, retailer, and distributor for the manufacturing parent, HMA is charged with the responsibility of overseeing defects in all Hyundai vehicles sold in the United States."

LaBrot's opposition was filed on January 11, 2022, before the scheduled hearing date of January 25. On January 13 and 14, LaBrot filed a supplemental declaration of Bosch reporting his testing of the vehicle's windows, which is discussed further below.

### E. HMA's reply and objections

In its reply, HMA objected to LaBrot's late filings regarding Bosch's testing. It also noted that LaBrot did not dispute that the vehicle complied with FMVSS 118 section S4. HMA asserted that Bosch was unqualified to opine on FMVSS standards, and he provided no support for his conclusions that the vehicle was required to comply with section S5 or that the windows were unsafe. HMA also disagreed that the existence of an "auto-up" feature placed the vehicle outside the requirements of section S4. HMA again asserted that the consumer expectations test did not apply, because vehicle window safety standards and newtons of force are outside the everyday experience of ordinary consumers.

HMA asserted that there was no triable issue as to manufacturing defect, because LaBrot had submitted "no actual evidence of vehicle's intended design or specifications, and

---

standards of care in negligence actions." (*Elsner v. Uveges* (2004) 34 Cal.4th 915, 927.)

12

provides no evidence that the subject vehicle differed from the manufacturer's design or specifications, or from other typical units of the same product line. There is no evidence of what the intended design or specification for the subject vehicle even are." HMA asserted that Exhibit 13 was not authenticated, lacked foundation, and lacked any indication that it constituted the actual design specifications for the vehicle.[8]

As to LaBrot's negligence cause of action, HMA asserted that LaBrot had produced no evidence "supporting a claim that HMA was supposed to have conducted a specific inspection of the subject vehicle or any component thereof, that such inspection was negligently conducted, and that any negligent failure to inspect led to the incident or plaintiff's injuries."

HMA filed a set of 34 objections to the evidence LaBrot submitted in support of her opposition. LaBrot contends on appeal that the trial court erred in sustaining some of them, so we discuss these objections in detail below. As relevant here, HMA objected that Bosch's declarations failed to establish he was qualified to provide the opinions in his declaration. (Evid. Code, § 720.) HMA objected to a declaration of LaBrot's attorney, Kseniya Stupak, and to certain evidence attached to Stupak's declaration. HMA further objected to certain portions of LaBrot's and Sky's declarations.

## F.    Supplemental opposition and reply

The motion was initially set for a hearing on January 25, 2022. In a minute order issued that date, the trial court stated

---

[8]    A later-filed declaration by HMA's expert Lange stated that Exhibit 13 was a "Hyundai Shop Manual" that "specifies the manner in which a technician is [to] determine if the power window's automatic reverse feature is functioning correctly."

13

that it granted LaBrot's request for a continuance "to permit Plaintiff to file a supplemental opposition and supplemental separate statement now that Plaintiff's expert has completed the inspection of the Subject Vehicle and completed his report on the Subject Vehicle's power windows."

LaBrot filed a supplemental opposition and refiled Bosch's declaration and testing results. In her supplemental opposition, LaBrot stated that her "expert witness, David Bosch, tested the 'auto up' feature on the 2017 Hyundai Sonata subject vehicle to determine whether it complied with the 100-Newton threshold required by FMVSS No. 118 S5.  (Bosch Supp. Decl. ¶ 2). Dr. Bosch tested the vehicle six times . . . .  During each test, Dr. Bosch measured the amount of force that the passenger-side power window exerted upon a load cell, to measure the amount of Newtons of force exerted by the window to trigger its reversal." LaBrot continued, "Dr. Bosch discovered that the amount of force measured among all six tests yielded between 179 and 262 Newtons, greatly exceeding the legally allowable limit."

LaBrot relied on Bosch's supplemental declaration.  Bosch described his tests and concluded, "[I]t is clear from the objective and empirical results of these tests that the subject vehicle is not in compliance with FMVSS No. 118.  Based on this violation of FMVSS, and based on the excessively high force that the window exerts, I opine that the vehicle is defective and unreasonably dangerous."  LaBrot asserted that "Bosch's expert testing proves that Hyundai violated" FMVSS 118 S5.  She asserted this evidence provided a triable issue of fact regarding her claims for negligence, manufacturing defect, and design defect.

In its supplemental reply, HMA noted that Bosch "provides no C.V. and his declaration is devoid of any background, training,

or experience in either the interpretation or application of FMVSS standards.  His 'opinions' on the application of FMVSS 118 are speculative, conclusory, and have absolutely no foundation. Evidence Code § 801(b)."  HMA stated, "Bosch does not dispute that the subject vehicle complies with FMVSS 118 S4, and he fails to establish that S5 applies to the subject vehicle."  HMA disagreed with Bosch's opinion that FMVSS 118 section S4 did not apply, stating, "The automatic up feature is not inconsistent with S4, and the fact that the subject vehicle has an automatic up feature does not change that S4 applies."  HMA also asserted that "Bosch concocted his own protocol for measuring window closing force, which follows no known or established protocol for doing so, but more importantly, utterly fails to follow the mandatory specific test protocols that are used for determining compliance with FMVSS 118 S5 and which are set out in FMVSS TP (Test Protocol) 118-06."

## G.    Court ruling

No court reporter was present at the hearing.  In a written ruling, the trial court granted HMA's motion for summary judgment.  The court's rulings on HMA's objections are discussed in more detail below, but notably the court sustained nearly all of HMA's objections to Bosch's declarations.

Regarding LaBrot's negligence cause of action, the court agreed with HMA that as a distributor of the vehicle, HMA did not have the duties of a manufacturer regarding design and testing.  The court further stated that HMA's expert Lange established that "vehicles with power window actuating systems, such as the Subject Vehicle, may be certified pursuant to either Section 4 or Section 5 of FMVSS 118, but need not comply with both sections, and that the Subject Vehicle was engineered to

15

comply with and did comply with Section 4 of FMVSS 118. [Record citation.] The Court finds this evidence satisfies Defendant's burden establishing that the Subject Vehicle complied with FMVSS 118. [¶] The Court finds that Plaintiff fails to meet her burden establishing the existence of a triable issue of material fact. The Court does not consider the testimony of Plaintiff's expert, David Bosch. Plaintiff fails to establish that David Bosch is qualified to provide expert testimony on the issue of whether the Subject Vehicle complied with FMVSS 118 and other matters he seeks to opine on. Plaintiff fails to present any other competent and admissible evidence sufficient to establish the existence of a triable issue of fact with respect to whether the Subject Vehicle was 'defective' for failing to comply with FMVSS 118." The court held that LaBrot's remaining evidence was insufficient to establish a triable issue as to negligence.

Turning to LaBrot's cause of action for strict liability design defect, the court stated that as with the negligence claim, HMA "is entitled to summary adjudication . . . . Defendant establishes that the Subject Vehicle complied with FMVSS 118 and Plaintiff fails to establish a triable issue of material fact as to whether the Subject Vehicle was 'defective' because it failed to comply with FMVSS No. 118. The Court does not consider the testimony of David Bosch as to the issue of whether the Subject Vehicle contained a design defect because Plaintiff fails to show that he is qualified to testify on the issue pursuant to Evidence Code sections 720 and 801." The court also stated that LaBrot's "testimony regarding what happened to her finger is insufficient to establish a triable issue of material fact as to whether the Subject Vehicle contained a design or manufacturing defect." Because LaBrot "fails to set forth competent evidence that the

16

Subject Vehicle failed to comply with FMVSS No. 118, [she] fails to establish a triable issue of fact as to whether the Subject Vehicle contained the design defect alleged in the Complaint."

Regarding LaBrot's cause of action for strict liability manufacturing defect, the court found that HMA "meets its burden on this claim for the same reasons it meets its burden with respect to the negligence and design defect claims. Specifically, Defendant establishes that the Subject Vehicle complied with FMVSS 118. [Record citations.] Once again, the Court does not consider the testimony of David Bosch as to the issue of whether the Subject Vehicle contained a manufacturing defect. The Court has ruled that Plaintiff fails to show that he is qualified to testify on the issue pursuant to Evidence Code sections 720 and 801." The court said LaBrot's testimony alone was insufficient to demonstrate a manufacturing defect, and continued, "Since Plaintiff fails to set forth competent evidence that the Subject Vehicle failed to comply with FMVSS No. 118, Plaintiff fails to establish a triable issue of fact as to whether the Subject Vehicle contained the manufacturing defect as alleged in the Complaint."

The court therefore granted HMA's motion for summary judgment. The court entered judgment for HMA, and LaBrot timely appealed.

## DISCUSSION

Summary judgment is appropriate when "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (§ 437c, subd. (c).) The party moving for summary judgment bears the burden of demonstrating that there is no triable issue of material fact and that judgment is

17

warranted as a matter of law. (*Ghukasian v. Aegis Security Ins. Co.* (2022) 78 Cal.App.5th 270, 274; *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.) Once the moving party meets this initial burden, the burden shifts to the opposing party to show "that a triable issue of one or more material facts exists as to the cause of action or a defense thereto." (§ 437c, subd. (p)(2).)

"On review of a summary judgment, the appellant has the burden of showing error, even if [the appellant] did not bear the burden in the trial court." (*Claudio v. Regents of the University of California* (2005) 134 Cal.App.4th 224, 230, 35.) "'As with an appeal from any judgment, it is the appellant's responsibility to affirmatively demonstrate error and, therefore, to point out the triable issues the appellant claims are present by citation to the record and any supporting authority. In other words, review is limited to issues which have been adequately raised and briefed.'" (*Ibid*; see also *Abdulkadhim v. Wu* (2020) 53 Cal.App.5th 298, 301.)

Because we review the grant of summary judgment de novo, "considering all the evidence set forth in the moving and opposition papers except evidence for which objections were made and sustained" (*Ryder v. Lightstorm Entertainment, Inc.* (2016) 246 Cal.App.4th 1064, 1072), we first consider LaBrot's contentions that the trial court erred in sustaining some of HMA's objections.

## A. Evidentiary objections

Following a grant of summary judgment, we review the trial court's evidentiary rulings for abuse of discretion. (See, e.g., *Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773; *Ryder v. Lightstorm Entertainment,*

18

*Inc.*, *supra*, 246 Cal.App.4th at p 1072; *LAOSD Asbestos Cases* (2023) 87 Cal.App.5th 939, 946.)

1.      *Bosch's expert opinions and testing*

LaBrot asserts the trial court erred in sustaining HMA's objections 2, 3, 4, 5, 25, 26, 27, and 28, which related to the expert opinion of LaBrot's expert witness, David Bosch. Objections 2, 3, 4, 5, and 25 challenged the admissibility of Bosch's opinions about the application of FMVSS 118 to the vehicle.  Objections 26, 27, and 28 were to Bosch's discussion about the tests he conducted on the vehicle.

One basis for HMA's objections was that Bosch failed to state facts showing his expert qualifications to express an opinion.  HMA also objected on the basis that Bosch's opinions lacked foundation and were speculative, conclusory, and based on improper matters.  The court sustained these objections, citing Evidence Code sections 720 and 801, and stating that LaBrot "fails to establish that David Bosch is qualified to provide expert testimony on the issue of whether the Subject Vehicle complied with FMVSS 118 and other matters he seeks to opine on."

On appeal, LaBrot contends the trial court erred because "HMA had already been provided with LaBrot's expert witness designation which outlined Bosch's credentials to testify on the subject.  [Record citation.]  The trial court abused its discretion by sustaining HMA's objections and disallowing this testimony's use in support of LaBrot's opposition to HMA's motion for summary judgment."  LaBrot cites to her expert witness designation, which states that Bosch is a retained expert and includes his curriculum vitae.  LaBrot offers no further argument, explanation, or legal authority on the issue.

19

An expert declaration in the summary judgment context "shall set forth admissible evidence, and shall show affirmatively that the affiant is competent to testify to the matters." (§ 437c, subd. (d).) "A person is qualified to testify as an expert if he has special knowledge, skill, experience, training, or education sufficient to qualify him as an expert on the subject to which his testimony relates. Against the objection of a party, such special knowledge, skill, experience, training, or education must be shown before the witness may testify as an expert." (Evid. Code, § 720, subd. (a).) An expert's testimony must be based on the expert's "special knowledge, skill, experience, training, and education." (Evid. Code, § 801, subd. (b).)

LaBrot's argument amounts to a contention that because she complied with the discovery requirement to exchange expert witness information (see § 2034.210, et seq.), the admissibility requirements of section 437c did not apply. In other words, LaBrot argues that because HMA had received Bosch's expert witness information in discovery, there was no need for LaBrot to provide such information to the court in the context of summary judgment. LaBrot cites no authority for this proposition, and we have found none. "[S]ection 437c has always required the evidence relied on in supporting or opposing papers to be admissible" (*Perry v. Bakewell Hawthorne, LLC* (2017) 2 Cal.5th 536, 542), and nothing suggests this requirement changes when documentation regarding an expert's qualification has been served on the other party. Thus, LaBrot has not demonstrated that the trial court erred in sustaining these objections.

LaBrot also contends the trial court abused its discretion by sustaining HMA's objections to Bosch's supplemental declaration, including evidence about Bosch's testing of the vehicle's window.

20

HMA objected to the testing evidence in objections 23 through 34, asserting that the evidence was untimely submitted, it lacked foundation because the testing did not show it was done pursuant to FMVSS standards, it was conclusory, it was speculative, and Bosch was unqualified to provide expert opinion on the issue. As stated above, the trial court sustained HMA's objections.

On appeal, LaBrot asserts that the objections should have been overruled because the trial court granted her request for supplemental briefing to provide Bosch's testing, which was completed after her opposition to the motion was filed. However, the court did not exclude Bosch's supplemental declaration or the testing on timeliness grounds. To the contrary, the court overruled HMA's objection based on timeliness of the filing. In discussing these objections, LaBrot does not address the actual basis for the court's ruling: her failure to demonstrate that Bosch was qualified to offer expert testimony regarding the operation of the windows. As such, LaBrot has not met her burden on appeal to show that the trial court abused its discretion by excluding Bosch's supplemental declaration or his testing of the windows.

2. *Declaration of Kseniya Stupak*

LaBrot argues the trial court erred in "not considering" the declaration of her attorney, Kseniya Stupak, and related evidence, and in "disregarding evidentiary objections pertaining to the automatic reverse feature." Her contentions are not supported by the record, because LaBrot's argument conflates two different declarations.

LaBrot filed her opposition to HMA's motion and supporting evidence on January 11, 2022. The opposition cover page states that it was concurrently filed with multiple documents, including a Stupak declaration. We will call this

21

Stupak's "original" declaration. Stupak's original declaration was apparently served on HMA, which objected to parts of Stupak's original declaration. However, it apparently was not filed with the trial court, which noted in its January 25 minute order granting LaBrot's continuance that the Stupak declaration was referenced in LaBrot's documents, but had not been filed.[9]

With her supplemental briefing, LaBrot filed a declaration by Stupak signed on February 1, 2022. We will call this Stupak's "supplemental" declaration. The supplemental declaration stated only that the vehicle's design specifications and videos of Bosch's tests had been lodged with the court.

In its ruling on the motion for summary judgment, the court addressed HMA's objections to Stupak's original declaration, stating, "As noted in the January 25, 2022 Minute Order, Plaintiff purports to have filed a declaration of Kseniya Stupak, however no such declaration is shown in the record as filed with the Court. [¶] The Court cannot rule on the evidentiary objections Nos. 6, 7, and 16 - 21 with respect to the declaration of Kseniya Stupak because it was not filed with the Court. Plaintiff failed to refile the declaration in light of the Court's January 25, 2022 Minute Order. Therefore, the Court does not consider the declaration of Kseniya Stupak."

On appeal, LaBrot argues that the trial court "excluded the timely declaration of Kseniya Stupak, filed with Plaintiff's supplemental briefing." Her record citations are to the court's ruling quoted above (which addressed only Stupak's original declaration) and Stupak's supplemental declaration. The supplemental declaration, signed and filed on February 1, 2022,

---

[9]     This declaration is also not in the record on appeal.

22

clearly is not the declaration to which HMA objected on January 20, and is not the declaration addressed in the court's order.

Thus, LaBrot has failed to demonstrate that the court erred in how it addressed HMA's objections to Stupak's original declaration. She has not shown that the court erred in declining to rule on the objections to Stupak's original declaration, which had not been filed, nor has she shown that the court disregarded Stupak's supplemental declaration.

### 3. *Declaration of LaBrot*

LaBrot stated in her declaration that Sky closed the passenger window "using the automatic power window feature. (The automatic power window feature means the Owner's Manual-referenced 'auto-up' feature.)" HMA objected to this statement in objection 8 on the grounds that the statement lacked foundation "regarding what Ms. LaBrot's daughter was doing and whether the automatic power window feature or 'auto-up' feature referenced in the Owner's Manual were used." The trial court sustained this objection.

On appeal, LaBrot asserts the trial court erred in sustaining objection 8 because "the testimony was offered to illustrate what LaBrot personally witnessed her daughter doing." HMA correctly points out that LaBrot "argues that the trial court abused its discretion in sustaining HMA's objection to this evidence, but offers no argument or explanation why." LaBrot points to no evidence suggesting that she was personally aware of whether Sky was using the manual or automatic method of raising the window. Indeed, Sky stated in her declaration that LaBrot's back was toward her when she closed the window. Moreover, Sky testified that she had never read the car's owner's manual. Testimony lacking personal knowledge is inadmissible.

23

(Evid. Code § 702, subd. (a).) LaBrot has not demonstrated that the trial court erred in sustaining objection 8.

4. *Declaration of Sky LaBrot*

LaBrot contends the court erred in sustaining or partially sustaining HMA's objections 12, 13, 14, and 15 to portions of Sky's declaration. In a single argument that does not address Sky's specific statements or HMA's objections to them, LaBrot asserts that these objections should have been overruled because Sky's statements were offered "to illustrate what Sky LaBrot personally observed her mother and children were doing, as well as what she observed as the incident occurred." As noted above, testimony is inadmissible unless the witness "has personal knowledge of the matter." (Evid. Code, § 702, subd. (a).)

HMA's objection 12 was to a statement in Sky's declaration, similar to LaBrot's above, that Sky "rolled up the Hyundai's automatic windows using the automatic power window feature[.] (The automatic power window feature means the Owner's Manual-referenced 'auto-up' feature)." HMA objected on the grounds that the statement lacked foundation and personal knowledge. Because Sky stated that she did not read the owner's manual before the incident, LaBrot has not demonstrated that the trial court abused its discretion by sustaining this objection on the grounds that Sky did not have personal knowledge.

HMA's objection 13 was to the following statement in Sky's declaration: "I did not need to read the Owner's Manual as I understood how to operate the vehicle's power window. I knew how the window switch on my 2017 Hyundai Sonata operated. I expected, as a reasonable consumer, that the window would stop and reverse, not amputate my mother's finger." HMA objected on the grounds that the statement lacked foundation, was

24

speculative and conclusory, and was irrelevant. The trial court sustained HMA's objection 13 as to the phrase "as a reasonable consumer," and overruled the remainder.

LaBrot offers no argument as to why the trial court erred in sustaining HMA's objection to Sky's use of this legal phrase.[10] As noted above, LaBrot's only argument is that Sky's statements reflected what she observed during the incident, which is not true of the phrase "as a reasonable consumer." LaBrot therefore has not demonstrated that the court's ruling on objection 13 was an abuse of discretion.

HMA's objection 14 was to the following statement in Sky's declaration: "When the window rolled up it caught my mother's right ring finger against the window frame and amputated her finger through the bone. The 2017 Hyundai Sonata window completely amputated my mother's right ring finger. [*Sic*] The 2017 Hyundai Sonata window completely amputated my mother's right ring finger. My mother's finger was held by a very small piece of skin. My mother had to hold the top of her right ring finger, otherwise it would have been down flapping around on a piece of skin. The 2017 Hyundai Sonata window also crushed my mother's right middle finger without amputating it." HMA objected that these statements lacked foundation, lacked personal knowledge, were irrelevant (Evid. Code, § 350), and were misleading, confusing, and prejudicial (Evid. Code, § 352.)

---

[10]     The consumer expectation test considers the expectations of ""'a hypothetical reasonable consumer, not the expectation of the particular plaintiff in the case.'"" (*Verrazono v. Gehl Company* (2020) 50 Cal.App.5th 636, 646.)

The trial court ruled that HMA's objection 14 was "OVERRULED as to the sentence 'My mother's finger was held by a very small piece of skin.['] Otherwise, SUSTAINED." LaBrot offers no reasoning as to why the court erred in excluding Sky's multiple, repetitive statements that the window amputated LaBrot's finger. Moreover, Sky did not establish that she had personal knowledge about LaBrot's middle finger being "crushed" by the window. Her declaration states that she did not know her mother was holding the window because "her back was towards me," and it is not clear whether Sky observed LaBrot's fingers being caught in the window. Thus, LaBrot has not demonstrated that the trial court abused its discretion in partially sustaining objection 14.

HMA's objection 15 was to the following statement in Sky's declaration: "The right passenger window had blood all over. My children were present at this horrific scene and my 4 ½ year old daughter up until now is scared for life and terrified of car windows. Once we received help at the hand specialist and my mother's finger was sewn together it was a waiting game to see whether she would lose her finger permanently. My mother went through several surgeries and physical therapies. And based on prognosis [*sic*], she will never have a normal life again. My mother has been living in constant pain, anxiety, and unable to enjoy things she used to do, such as: hold her grandkids, play musical instruments, take care of her domestic animals, or even cook." Again, HMA objected that these statements lacked foundation, lacked personal knowledge, were irrelevant, and were misleading, confusing, and prejudicial.

The trial court overruled objection 15 for the statements "The right passenger window had blood all over" and "My mother

has been living in constant pain, anxiety, and unable to enjoy things she used to do, such as: hold her grandkids, play musical instruments, take care of her domestic animals, or even cook." The court sustained the remainder of objection 15. We find no error. Although Sky could potentially comment on behavior she observed in her daughter, the child's fears are not relevant to LaBrot's case. Sky also did not establish that she had personal knowledge about the course of LaBrot's medical care, or whether LaBrot would "have a normal life" in the future. LaBrot has not demonstrated that the trial court abused its discretion in partially sustaining HMA's objection 15.

Having found no error in the court's evidentiary rulings, we turn to the substance of the motion for summary judgment.

## B.    HMA's burden on summary judgment

LaBrot argues HMA failed to meet its initial summary judgment burden on her causes of action for negligence and strict liability design defect. LaBrot did not make this argument in the trial court. On appeal, she does not cite the evidence HMA presented with its motion or discuss why it was insufficient to shift the burden. She also does not discuss the trial court's ruling on this issue, or make any argument as to how the trial court erred in concluding HMA met its initial burden.

"In order to demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record." (*WFG National Title Insurance Company v. Wells Fargo Bank, N.A.* (2020) 51 Cal.App.5th 881, 894; see also Cal. Rules of Court, rule 8.204(a)(1)(B) & (C) [every appellate brief must support each point "by argument and, if possible, by citation of authority," as well as "[s]upport any reference to a matter in the record by a

27

citation to the volume and page number of the record where the matter appears]".)  Because LaBrot has not supported this contention with references to the record or reasoned argument as to why the trial court's ruling was incorrect, this contention has been forfeited.  (See *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852.)

## C.     **Strict liability design defect**

California law recognizes three types of product defects under strict liability: manufacturing defects, design defects, and warning defects. (*Webb, supra,* 63 Cal.4th at p. 180; *O'Neil v. Crane Co.* (2012) 53 Cal.4th 335, 347.)  "A design defect exists when the product is built in accordance with its intended specifications, but the design itself is inherently defective." (*Chavez v. Glock, Inc.* (2012) 207 Cal.App.4th 1283, 1303.)

In her design defect cause of action, LaBrot alleged the vehicle "was not designed in compliance with FMVSS No. 118" because it "did not 'stop and reverse direction' as required in sub-section S5.1 of FMVSS No. 118."  She asserted that her finger was injured "because of Defendant's failure to manufacture its vehicle in compliance with FMVSS No. 118."  The trial court found HMA had "establishe[d] that the Subject Vehicle complied with FMVSS 118 and Plaintiff fail[ed] to establish a triable issue of material fact as to whether the Subject Vehicle was 'defective' because it failed to comply with FMVSS No. 118."

On appeal, LaBrot contends the trial court erred in focusing on FMVSS 118 and in accepting "a strict four corners argument regarding LaBrot's complaint."   She asserts that "HMA and the trial court's overreliance on factual allegations surrounding FMVSS is misplaced," because "the question of whether FMVSS is violated is ancillary to the question of

28

whether HMA can be found liable in strict liability."  She argues that instead, the trial court should have considered whether she demonstrated a triable issue of fact under the consumer expectation and risk-benefit tests,[11] without regard to whether the vehicle violated FMVSS 118.

HMA correctly points out that LaBrot's complaint alleged that the defect at issue was a failure to comply with FMVSS 118, and the complaint included no allegations regarding consumer expectations or the risk-benefit test.  "The materiality of a disputed fact is measured by the pleadings [citations], which 'set the boundaries of the issues to be resolved at summary judgment.'" (*Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1250.)  Thus, "[a] plaintiff may not oppose summary judgment by raising a theory not pleaded." (*Johnson v. The Raytheon Co., Inc.* (2019) 33 Cal.App.5th 617, 636.)  "To create a triable issue of material fact [in response to a motion for summary judgment], the opposition evidence must be directed to issues raised by the pleadings." (*Distefano v. Forester* (2001) 85 Cal.App.4th 1249, 1264 (*Distefano*); see also *Laabs, supra,* 163

---

[11]  "The existence of a design defect may be established according to one of two alternative tests.  [Citation.]  First, under the so-called consumer expectations test, a design is defective 'if the plaintiff demonstrates that the product failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner.'  [Citation.]  Second, under the risk-benefit test . . . , a design is defective 'if through hindsight the jury determines that the product's design embodies "excessive preventable danger,"' or, in other words, if the jury finds that the risk of danger inherent in the challenged design outweighs the benefits of such design." (*Kim v. Toyota Motor Corp.* (2018) 6 Cal.5th 21, 30 (*Kim*).)

Cal.App.4th at p. 1253 ["'The pleadings delimit the issues to be considered on a motion for summary judgment'"].)

Although LaBrot conceivably could have alleged that the vehicle failed to meet consumer expectations—she could have alleged that a consumer would not expect a modern vehicle window to amputate human fingers, for example—she did not. Instead, LaBrot only alleged in her complaint that the vehicle was defective for failing to comply with FMVSS 118, and that her damages were caused by HMA's failure to comply with FMVSS 118. Indeed, LaBrot's focus on FMVSS 118 in her complaint suggested that the consumer expectations test would be inapplicable to her claims. "[W]here the minimum safety of a product is within the common knowledge of lay jurors, expert witnesses may not be used to demonstrate what an ordinary consumer would or should expect." (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 567 (*Soule*).

We agree with HMA that FMVSS standards and newton forces of vehicle windows are not within the everyday experience of vehicle users or lay jurors. LaBrot could not defeat summary judgment by arguing a theory incompatible with the allegations in her complaint. "If the opposing party's evidence would show some factual assertion, legal theory, defense or claim not yet pleaded, that party should seek leave to amend the pleadings before the hearing on the summary judgment motion." (*Distefano, supra,* 85 Cal.App.4th 1249, 1264-1265.) LaBrot did not do so here.

LaBrot also contends the trial court erred by not assessing her claims under the risk-benefit test. LaBrot mentioned the risk-benefit test in passing on the last page of her opposition to HMA's motion, but she did not discuss how it applied to her

claims. The court did not err by failing to consider an argument that was not before it, and we will not consider it for the first time on appeal. An appellate court has discretion to consider a legal question based on uncontroverted facts for the first time on appeal. (See *County of Kern v. T.C.E.F., Inc.* (2016) 246 Cal.App.4th 301, 326.) However, determining the risks and benefits of vehicle window design is not such a question; the application of the risk-benefit theory requires a fact-intensive consideration about whether the benefits of a design, balanced against feasibility and cost of alternative designs, outweigh the inherent risk of harm. (See, e.g., *McCabe v. American Honda Motor Co.* (2002) 100 Cal.App.4th 1111, 1121.)

LaBrot does not further contend that the trial court erred in granting HMA's motion regarding her design defect cause of action. Thus, LaBrot has failed to demonstrate that the trial court erred in granting summary adjudication of this claim.

**D.    Strict liability manufacturing defect**

A manufacturing defect arises "when a flaw in the manufacturing process creates a product that differs from what the manufacturer intended." (*Webb, supra,* 63 Cal.4th at p. 180.) "In other words, a product has a manufacturing defect if the product as manufactured does not conform to the manufacturer's design." (*Garrett v. Howmedica Osteonics Corp.* (2013) 214 Cal.App.4th 173, 190; see also *Gall v. Smith & Nephew, Inc.* (2021) 71 Cal.App.5th 117, 124 ["A classic manufacturing defect is when a product leaves the assembly line in substandard condition"].)

In her complaint, LaBrot alleged that the vehicle "contained a manufacturing defect in the form of the automatic power-operated unit that had a defective passenger window

31

system when it left Defendant's possession or when Defendant performed maintenance on the vehicle." She also alleged that her "finger would still be intact if Defendant had manufactured its product in compliance with FMVSS No. 118 – an automatic power-operated window which retracts upon encountering an obstruction such as Plaintiff's finger."

LaBrot offers no admissible evidence that the vehicle at issue differed from its intended design. The evidence LaBrot relied upon below for this contention—Bosch's tests of Sky's vehicle and his opinion that the window closed with more than 100 newtons of force—was excluded. As discussed above, we find no error in that ruling.

LaBrot proposes on appeal that she may prove manufacturing defect by the fact of the incident alone: "[U]nless HMA admits to designing a window system whereby it expects its customers to have their hands severed when its windows are raised, [the vehicle] does not conform to HMA's design and therefore has a manufacturing defect."[12] She argues that she may defeat summary judgment by showing only that she was injured while using the product in a foreseeable manner. The cases she relies upon, however, do not excuse the plaintiff from proving the product had a defect. Rather, those cases state that a manufacturer is strictly liable "'*if a defect in the manufacture or design of [the] product* causes injury while the product is being

---

[12]     LaBrot also offers no evidence that her injury could not have occurred in the absence of the alleged defect. She asserted in her opposition to HMA's motion that it takes more than 100 newtons of force to sever a finger. However, she did not offer evidence to support this contention, instead stating that this fact "will be shown through the remainder of expert discovery."

used in a reasonably foreseeable way.'" (*Kim, supra,* 6 Cal.5th at p. 30, quoting *Soule, supra,* 8 Cal.4th at p. 560 [emphasis added]; see also CACI No. 1201 [to establish a manufacturing defect, the plaintiff must prove "[t]hat the [*product*] contained a manufacturing defect"]; *Soule, supra,* 8 Cal.4th at p. 572 ["A manufacturer is liable only when a defect in its product was a legal cause of injury"].)

LaBrot does not point to any admissible evidence that Sky's vehicle differed from its intended design. Thus, she has failed to demonstrate that the trial court erred in granting HMA's motion as to the manufacturing defect cause of action.

### E.    Negligence

"[U]nder either a negligence or a strict liability theory of products liability, to recover from a manufacturer, a plaintiff must prove that a defect caused injury. [Citations.] Under a negligence theory, a plaintiff must also prove 'an additional element, namely, that the defect in the product was due to negligence of the defendant.'" (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 479.)  "To establish a cause of action for negligence, the plaintiff must show that the 'defendant had a duty to use due care, that he breached that duty, and that the breach was the proximate or legal cause of the resulting injury.'" (*Brown v. USA Taekwondo* (2021) 11 Cal.5th 204, 213.) " Whether a duty exists is a question of law to be resolved by the court." (*Ibid.*)

Below, the trial court held that summary judgment of LaBrot's negligence claim was appropriate on two grounds: first, that LaBrot failed to demonstrate a triable issue of material fact as to whether the vehicle was defective under FMVSS 118 (i.e., breach), and second, that she failed to demonstrate that HMA could be liable as a "manufacturer" of the vehicle (i.e., duty).

33

Regarding duty, LaBrot asserts on appeal that "as the representative distributor for the manufacturing parent, HMA is charged with the responsibility of overseeing defects in the Hyundai vehicles sold in the United States." She relies on *Vandermark v. Ford Motor Co.* (1964) 61 Cal.2d 256, 262-263, but that case holds that a retailer within a chain of distribution can be held liable under *strict liability*, not negligence. She cites no authority supporting the contention that a distributor may be held liable under a negligence theory for a manufacturer's defective product.

LaBrot also states that HMA is a "manufacturer" under federal law. She points to 49 U.S.C. section 30102(a)(6)(B), which states that a "manufacturer" may include a person "importing motor vehicles . . . for resale." HMA points out that it meets the definition of "distributor" in that statute: "a person primarily selling and distributing motor vehicles or motor vehicle equipment for resale." (49 U.S.C. § 30102(a)(4).)

LaBrot offers no reasoning or argument as to how the definitions in 49 U.S.C. section 30102 affect HMA's duties regarding the design, manufacture, or testing of the vehicles it distributes. As such, LaBrot has failed to show that the trial court erred in finding that HMA did not have a duty to LaBrot regarding the vehicle's compliance or noncompliance with FMVSS 118, and granting HMA's motion on that basis.[13]

---

[13] Summary judgment is appropriate when "[o]ne or more of the elements of the cause of action cannot be . . . established." (§ 437c, subd. (o)(1).) Because LaBrot did not establish a triable issue of fact as to the element of duty, we need not address whether LaBrot demonstrated a breach.

Overall, LaBrot has failed to demonstrate that the trial court erred in granting HMA's motion for summary judgment.

**DISPOSITION**

The judgment is affirmed.  HMA is entitled to its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS,  ACTING P. J.

We concur:



MORI, J.



ZUKIN, J.

35